# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT O. CARR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | C.A. No. 2018-0565-SG |
| | ) | |
| | ) | |
| GLOBAL PAYMENTS INC. and | ) | |
| HEARTLAND PAYMENT SYSTEMS, | ) | |
| LLC, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: July 25, 2019
Date Decided: October 31, 2019

A. Thompson Bayliss and Adam K. Schulman, of ABRAMS & BAYLISS LLP, Wilmington, Delaware; OF COUNSEL: Peter L. Welsh and Paul S. Kellogg, of ROPES & GRAY LLP, Boston, Massachusetts, *Attorneys for Plaintiff.*

T. Brad Davey and Andrew H. Sauder, of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; OF COUNSEL: Steven J. Rosenwasser and Fredric J. Bold, Jr. of BONDURANT MIXSON & ELMORE LLP, Atlanta, Georgia, *Attorneys for Defendants.*

GLASSCOCK, Vice Chancellor

Most advancement cases are redolent of buyer's remorse, and are often defended in the face of an explicit contractual obligation. This case, in its first iteration, was one such, involving litigation brought by the Defendants in New Jersey. That litigation gave rise to a right to advancement in the Plaintiff, a former officer and director of one of the Defendants. Subsequently, however, the Defendants amended their New Jersey allegations, in an attempt to bring themselves out from under their contractual advancement obligation, in part. Accordingly, they have moved to modify my advancement order.[1]

Such a motion, I confess, engages my skepticism. This Court, having found—over Defendants' protests—a right to advancement, ought to be wary of artful attempts at pleading around such a right. I found this case difficult, for that reason, at least. Nonetheless, in light of the facts and instructive case law, the Defendants' motion must be granted.

---

[1] I originally issued my advancement order on December 7, 2018. The Parties' Stip. & Order Governing Advancement Related to USAO Investigation, SEC Trading Investigation, Heartland Action and Fees-on-Fees, Docket Item ("D.I.") 35 ("Advancement Order").

# I. BACKGROUND[2]

Heartland Payment Systems, Inc. ("Heartland") is a Delaware corporation that designs and markets payment processing systems.[3] Robert Carr is the founder and former Chairman and CEO of Heartland.[4] In December 2015, Heartland, along with Global Payments Inc. and Data Merger Sub Two LLC, signed an Agreement and Plan of Merger (the "Merger Agreement").[5] Shortly after the merger, the government initiated several investigations relating to the trading of Heartland's stock while Carr was its CEO and Chairman.[6] Allegedly, Carr provided cash as well as inside information regarding the merger to his girlfriend so that she could purchase stock and capitalize on the bump in stock price after the merger's announcement.[7] These investigations culminated in a lawsuit by the SEC against Carr for insider trading.[8]

---

[2] I base these facts on the record submitted under affidavit with the parties' papers.

[3] Transmittal Aff. of A. Thompson Bayliss to Pl. Robert O. Carr's Opp'n to Defs.' Mot. to Modify the Advancement Order, D.I. 41 ("Thompson Aff."), Ex. E, First Am. Compl. ("Am. Compl."), ¶¶ 62, 65.

[4] *Id.* ¶ 1.

[5] *Id.* ¶ 3.

[6] *Id.* ¶¶ 155–56, 164–65.

[7] *Id.* ¶¶ 4–42.

[8] *Id.* ¶ 186.

In response to those government investigations, Heartland filed suit in the United States District Court for the District of New Jersey (the "New Jersey Action"). [9]  This initial complaint (the "Initial Complaint") asserted claims for breach of fiduciary duty and breach of contract against Carr.[10]  The breach of fiduciary duty claims concerned the alleged insider trading described above.  The breach of contract claims alleged that Carr breached the non-compete and non-solicitation clauses of his employment agreement.[11]  Specifically, the breach of contract claim alleged that Carr unlawfully founded a new company called Beyond during his restricted period that offered competing products and services.[12]  Using his new company, he allegedly competed and solicited Heartland employees, in the process using purloined confidential information.[13]

Section 5.9(a) of the Merger Agreement provides for indemnity and advancement for officers or directors of Heartland, for pre-merger acts, "to the fullest extent permitted by law, as required by . . . the organizational documents of

---

[9] Declaration of Steven Rosenwasser in Support of Defs. Mot. to Modify the Advancement Order, D.I. 37 ("Rosenwasser Aff."), Ex. A, Compl. ("Compl.").

[10] *Id.*

[11] *Id.* ¶¶ 150–86.

[12] *Id.* ¶¶ 178–81.

[13] *Id.* ¶¶ 150–86.  The Initial Complaint was "intended to, among other things, preclude Carr from disclosing or misappropriating [Heartland's] confidential information."  *Id.* ¶ 154.  It alleged that he breached confidentially through his insider trading.  *Id.* ¶¶ 166–76.  It also alleged that he utilized confidential compensation and contract information in competing with Heartland.  *Id.* ¶¶ 181–82.

the company."[14]    Section 5.9(b) of the Merger Agreement also provides for indemnity and advancement post-merger, "to the fullest extent permitted under applicable Law" for any litigation "to the extent such Litigation arises out of or pertains to the fact that an Indemnitee is or was an officer or director of the Company."[15]  The Merger Agreement requires the person seeking advancement to make an undertaking to repay, should a court find that he is not entitled to indemnification.[16]

Carr requested advancement for his litigation expenses in the New Jersey Action, and Heartland refused.  In response, Carr filed this lawsuit to compel advancement.[17]  In a December 3, 2018 bench ruling, I found that Carr was entitled to advancement for both the breach of duty and the breach of contract claims brought in the New Jersey Action, and I issued an advancement order on December 7, 2018.[18] The New Jersey Action, meanwhile, was stayed while the criminal investigation in

---

[14] Thompson Aff., Ex. A, Merger Agreement between Global Payments Inc. and Heartland Payments Systems Inc., dated Dec. 15, 2015 ("Merger Agreement"), § 5.9(a).

[15] *Id.* § 5.9(b).

[16] *Id.*

[17] Verified Compl. for Advancement, D.I. 1.

[18] Advancement Order.

the District of Connecticut over Carr's insider trading proceeded.[19]  After my Order issued, this advancement action closed.

The stay in the New Jersey Action lifted on May 30, 2019, and a few days later the Defendants filed their amended complaint in that lawsuit (the "Amended Complaint").[20]  In addition to the existing claims against Carr for breach of fiduciary duty, they added claims for "Breach of the Duties of Loyalty, Trust, and Good Faith," "Equitable Fraud," and "Fraud."[21]  Additionally—and most importantly for this matter—the Defendants amended their breach of contract claim.[22]  Originally, the breach of contract claim alleged that Carr misused confidential information, engaged in unlawful competition, and participated in unlawful solicitation.[23]  The amended claim removes any allegations of misuse of confidential information and alleges only a breach of the non-compete and non-solicitation aspects of Carr's employment agreement; breaches occurring, per Defendants here, after the end of Carr's employment at Heartland.[24]

---

[19] Rosenwasser Aff., Ex. C, Def. Robert O. Carr's Mem. of Law in Support of Mot. for a Partial Extension of the Stay of Proc., at 5.

[20] Rosenwasser Aff., ¶ 4.

[21] Am. Compl., ¶¶ 150–224.

[22] *Id.* ¶¶ 225–53.

[23] Compl., ¶¶ 150–89.

[24] *See* Am. Compl., ¶¶ 225–53.  The allegations in the Amended Complaint revolve around the fact that Carr set up a competing business "within a few weeks" of leaving Heartland, that he

On June 3, 2019, after amending their claims in the New Jersey Action, the Defendants moved to modify my prior advancement order, and this case was reopened.[25] The motion to modify relates *only* to the breach of contract claim (and not the breach of fiduciary duty, breach of loyalty, or fraud claims) within that suit. The Defendants' amendments in the New Jersey Action make clear that the breach of contract claim arises solely from Carr's conduct after he was no longer an officer and director of Heartland.[26] In the Amended Complaint, the Defendants state they will not rely on allegations of the misuse of confidential information.[27] Accordingly, the Defendants ask that I revisit my finding that Carr is entitled to advancement for the breach of contract claim.

I heard oral argument on July 25, 2019 in Georgetown and considered the matter submitted on that date. This decision follows.

---

recruited others away from Heartland "as soon as [he] left," and that he developed competing products and services "within twelve (12) months of leaving" Heartland. *Id.* ¶¶ 242–44.

[25] Def. Mot. to Modify the Advancement Order, D.I. 37.

[26] *See* Am. Compl., ¶ 225–53.

[27] *See id.* ¶ 253 n.11 ("To be clear, for purposes of this litigation, [Heartland] is not claiming that Carr improperly used or disclosed [Heartland's] confidential information in connection with its claim that Carr breached his non-compete and non-solicitation covenants. That is, [Heartland] does not base, and will not base, its claim that Carr breached his non-compete and non-solicitation covenants on Carr's use or misuse of [Heartland's] confidential information.").

## II. ANALYSIS

Delaware law recognizes the potential for parties to eliminate their advancement obligations by amending their claims.[28] If the amendments successfully "moot [the] advancement dispute by removing any []claims that would trigger an advancement right," modification of a prior advancement order is proper.[29] On the other hand, the "mere relabeling" of claims will not support modification when the underlying litigation remains substantially the same.[30]

### A. Advancement Rights in the Merger Agreement are Consistent with Section 145

Section 145 of the Delaware General Corporation Law ("DGCL") allows corporations to commit to advancement rights for directors and officers for indemnifiable expenses, either in foundational corporate documents or by contract.[31] Section 145 permits indemnification for litigation that arises "by reason of the fact that" a party is or was an officer or director.[32] Here, the parties agree that § 5.9 of

---

[28] *Mooney v. Echo Therapeutics, Inc.*, 2015 WL 3413272, at *6 (Del. Ch. May 28, 2015) (citing *Xu Hong Bin v. Heckmann Corp.*, 2010 WL 187018, at *2 (Del. Ch. Jan. 8, 2010)).

[29] *Id.*

[30] *Brown v. LiveOps, Inc.*, 903 A.2d 324, 325 (Del. Ch. 2006).

[31] 8 *Del. C.* § 145(f) ("The indemnification and advancement of expenses provided by, or granted pursuant to, the other subsections of this section shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under any . . . agreement").

[32] 8 *Del. C.* § 145(a)–(b) ("A corporation shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or

8

the Merger Agreement provides the standard that governs Carr's advancement rights. Section 5.9 of the Merger Agreement promises indemnification and advancement for litigation that "arises out of or pertains to the fact that" Carr was an officer or director.[33] In other words, rather than importing the statutory standard "by reason of the fact," the drafters of the Merger Agreement chose to extend these rights in way of litigation that "pertains to" the party's corporate status. The first step in deciding this matter, then, is to determine whether the contractual language provides a *different* standard than the one found in Section 145.

The Defendants argue that because their claim (as amended) is strictly for breach of Carr's non-compete and non-solicitation obligations after his employment ended, the claim is a personal dispute between an employer and employee and is not brought "by reason of the fact" of Carr's former role as Chairman and CEO of Heartland. In response, Carr suggests the Defendants misapprehend the applicable standard governing advancement. Carr argues that the "by reason of the fact" test under Section 145 does not apply, and therefore the case law construing that phrase cited by the Defendants is inapplicable. Instead, Carr argues the language in § 5.9 of the Merger Agreement creates a different and broader standard for advancement.

---

proceeding . . . by reason of the fact that the person is or was a director, officer, employee or agent of the corporation. . . .").

[33] Merger Agreement, § 5.9(b).

9

As noted above, that section provides advancement for any litigation that "arises out of or pertains to" Carr's tenure as an officer. Carr contends this language is broader in scope than "by reason of the fact," and that it includes the breach of contract claim, even as amended.

The parties have creased the spines of several dictionaries battling over the linguistic differences between "pertains to" and "by reason of." Although grammar is pertinent, the determining factor lies in the construction of the Merger Agreement as a whole. My analysis is greatly simplified by the parties' agreement that "pertains to" is the equivalent of "related to," a phrase that has been construed by this Court in the context of an advancement contract with a similar structure, in pertinent part, to that before me.

In *Charney v. Am. Apparel, Inc.*,[34] this Court construed an advancement provision applicable to an officer of a Delaware corporation. Indemnification and advancement in that contract were available for claims "related to" the plaintiff's service as a corporate officer.[35] As here, the defendant in *Charney* contended that "related to" was the equivalent of the statutory phrase "by reason of," while the plaintiff urged it be read more broadly.[36]

---

[34] 2015 WL 5313769 (Del. Ch. Sept. 11, 2015).

[35] *Id.* at *1.

[36] *Id.* at *11.

10

In the contract at issue in *Charney*, the disputed phrases were contained in a defined term, "Indemnifiable Event."[37] That term appeared in both advancement-specific and indemnification-specific clauses.[38] This (in addition to other rationales cited by the Court)[39] caused the *Charney* Court to construe "related to" as identical to "by reason of" under the following logic: 1) Section 145(f) permits corporations and their employees to contract for indemnification and advancement, but 2) the scope of indemnification so permitted is delimited by Sections 145 (a) and (b), including the requirement that such indemnity be limited to claims "by reason of the fact" of the employment, such that 3) construing "related to" more broadly than "by reason of the fact" would create an indemnification right that was *ultra vires* and invalid, and 4) it is not reasonable to suppose that the drafters meant to create an invalid provision, therefore 5) the language should be construed as no more broad than the statutory limitation to avoid such invalidity with respect to the indemnification provision, and 6) principals of consistency required a construction of the language regarding advancement in the same way as the identical indemnification provision.[40] The Court recognized that canons of construction

---

[37] *Id.* at *8.

[38] *Id.* at *14.

[39] *Id*. at *13.

[40] *Id.* at *13–15.

11

favored giving different constructions to differing language—that is, crediting that a drafter had some intent for choosing "related to" rather than "by reason of"; the Court concluded that the reasoning laid out above trumped this consideration, however.[41]

I can find no basis to distinguish this case from *Charney*. Although the structure of the Merger Agreement before me is not identical to the indemnification contract in issue there, the Chancellor's rationale applies equally here. First, § 5.9(a) provides that Heartland will continue to honor indemnification obligations for pre-merger acts. Heartland shall:

> **indemnify, defend and hold harmless, and advance expenses** (subject to the Person to whom expenses are advanced providing an undertaking to repay such advances if it is finally determined by a court of competent jurisdiction that such Person is not entitled to indemnification) to [former or current officers or directors] . . . **with respect to all acts or omissions** by them in their capacities as such at any time **prior to the [merger date] to the fullest extent permitted by Law as required by (x) the Organizational Documents of the Company** or any such Subsidiary as in effect on the date of this Agreement **and (y) the Indemnity Agreements** . . .[42]

Section 5.9(b) then provides for indemnification and advancement for post-merger acts. Section 5.9(b) provides that without limiting § 5.9(a)

> commencing as of the [merger date] and ending on the sixth (6th) anniversary of the [merger date], Parent shall cause the Surviving Company to the fullest

---

[41] *Id.* at *15 ("To the extent redundancy exists in the terms at issue, such minor overlap is clearly preferable to adopting an interpretation that is contrary to the parties' likely intentions, would lead to absurd results, and risks exceeding the bounds of 8 *Del. C.* § 145.").

[42] Merger Agreement, § 5.9(a) (emphasis added).

extent permitted under applicable Law, (i) **indemnify and hold harmless each Indemnitee against and from any costs or expenses** (including attorneys' fees), judgments, fines, losses, claims, damages, liabilities and amount paid in settlement actually and reasonably incurred by such Indemnitee **in connection with any Litigation** . . . **to the extent such Litigation arises out of or pertains to the fact that an Indemnitee is or was an officer or director** . . . and (ii) pay in advance of the final disposition of any such Litigation the expenses (including reasonable attorneys' fees) of any Indemnitee [upon an undertaking to repay].[43]

The two clauses work together: they preserve pre-merger indemnification and advancement rights, and then extend such rights forward, post-merger. Importantly for my consideration here, both provisions bundle indemnification and advancement rights together.[44] In other words, under § 5.9, Heartland will indemnify for any litigation that "arises out of or pertains to" the fact that Carr was an officer and director, and it will also advance expenses for such litigation.

I find that the *Charney* rationale controls; any definition of "pertains to" that is more expansive than "by reason of the fact" would, as applied to the indemnification rights in § 5.9, per *Charney*, "invalidly exceed the corporation's indemnification powers as circumscribed under Section 145."[45] And, as in *Charney*, it is unreasonable to give "pertains to" one meaning when applied to indemnification

---

[43] *Id.* § 5.9(b) (emphasis added).

[44] For an example of a contrasting structure, in which the underlying agreement deals with indemnification in one provision and provides for advancement in a separate, subsequent provision, see *Mooney v. Echo Therapeutics, Inc.*, 2015 WL 3413272, at *3 (Del. Ch. May 28, 2015).

[45] *Charney*, 2015 WL 5313769, at *14.

and a different meaning when applied to advancement, given the structure of the contract. I note that the contentious language, "pertains to," is located in § 5.9(b)(i), which relates *solely* to indemnification and therefore is "circumscribed under Section 145."[46] Section 5.9(b)(ii) then offers advancement for expenses in "*any such Litigation.*"[47]

Hence, I find that the scope of "arises out of or pertains to" in the Merger Agreement is consistent with the "by reason of the fact" language found in Section 145.[48] I will apply the advancement provisions of the Merger Agreement accordingly.

> *B. The Breach of Contract Claim, as Amended, Does Not Arise "By Reason of the Fact" that Carr was an Officer and Director of Heartland*

Having decided that in the context of the Merger Agreement, "pertains to" and "by reason of the fact" may be used interchangeably, the question remains whether the breach of contract claim arises "by reason of the fact" that Carr served as Chairman and CEO of Heartland.

---

[46] Merger Agreement, § 5.9(b)(i).

[47] *Id.* § 5.9(b)(ii) (emphasis added).

[48] In addition to the rationale of *Charney*, I note that the equivalence of the phrases "pertains to" and "related to" is a matter of common English usage. "Pertain" means "[t]o relate directly to; to concern or have to do with." *Pertain*, *Black's Law Dictionary* (10th ed. 2014). Usage dictionaries similarly pair the phrases: "pertain usually means 'to relate to; concern.'" Bryan A. Garner, *A Dictionary of Modern American Usage* 47 (1998).

14

### 1. The "By Reason of the Fact" Test Requires a Causal Nexus between the Litigation and Carr's Official Corporate Capacity

Section 145 provides for advancement if the litigation arises "by reason of the fact" that a party "is or was . . . a director, officer, employee or agent of the corporation."[49]  Passing the "by reason of the fact" test requires showing a "nexus or causal connection" between the litigation and the party's "official corporate capacity."[50]  The requisite connection is established "if the corporate powers were used or necessary for the commission of the alleged misconduct."[51]  Advancement is a broad right, and "where there is no clear demarcation between covered and noncovered claims, the Court will err on the side of advancement."[52]

Applying the "by reason of the fact" standard, the alleged breaches of fiduciary duty by Carr warrant advancement because they involve his actions as Heartland's CEO.  Conversely, "advancement will be denied when the underlying claims are in the nature of an employment dispute, based on a personal obligation owed to the corporation . . . [and the employee] did not need to make use of any

---

[49] 8 *Del. C.* § 145(a)–(b).

[50] *Nielsen v. EBTH Inc.*, 2019 WL 4755865, at *8 (Del. Ch. Sept. 30, 2019) (quoting *Homestore v. Tafeen*, 888 A.2d 204, 214 (Del. 2005)); *see also Brown v. LiveOps, Inc.*, 903 A.2d 324, 328 (Del. Ch. 2006).

[51] *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1050–51 (Del. Ch. 2014) (quoting *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1011 (Del. Ch. 2007)).

[52] *White v. Curo Texas Holdings, LLC*, 2017 WL 1369332, at *12 (Del. Ch. Feb. 21, 2017); *LiveOps, Inc.*, 903 A.2d at 328.

entrusted corporate powers in order to engage in the conduct that gave rise to the specific claims."[53] As the Defendants point out, our case law provides that "[c]laims brought by a corporation against an [individual] for . . . breaches of a non-competition agreement are quintessential examples of a dispute between an employer" and an employee.[54] Unless the claim has some nexus to the service of the employee in pursuit of her delegated corporate powers, the litigation does not arise by reason of the fact of her service.

2. Post-termination Actions for Breach of Contract May Warrant Advancement if They Involve Confidential Information Learned Pre-Termination

For the reasons just explained, where a former officer or director seeks to vindicate advancement rights in the way of allegations of breach of non-compete or solicitation covenants, the question is whether the allegations are significantly intertwined with covered duties so as to arise by reason of exercise of those duties. The parties here, with great diligence, have cited the pertinent case law concerning whether allegations of post-employment prohibited competition enabled by company information purloined during employment trigger advancement. That case

---

[53] *Lieberman v. Electrolytic Ozone, Inc.*, 2015 WL 5135460, at *3 (Del. Ch. Aug. 31, 2015) (quoting *Weaver v. ZeniMax Media, Inc.*, 2004 WL 243163, at *3 (Del. Ch. Jan. 30, 2004)).

[54] *Ephrat v. MedCPU, Inc.*, 2019 WL 2613281, at *7 (Del. Ch. June 26, 2019) (quoting *Weaver*, 2004 WL 243163, at *3).

16

law is not a model of consistency. Vice Chancellor Zurn, in a scholarly opinion, recently considered the same case law, in *Ephrat v. medCPU*,[55] and I need not repeat that exercise here. The Vice Chancellor sided with the weight of authority under the *Brown v. LiveOps*[56] line of cases, finding such allegations of breach enabled by purloined confidential information require advancement.[57] The *medCPU* Court concluded that "allegations relating to post-separation use of confidential information learned pre-separation are 'by reason of the fact' of [plaintiffs'] positions."[58]

I find the reasoning in *medCPU* persuasive, and I follow it. Under this reasoning, claims arising post termination fall into two categories. If the claim as pled relies on the misuse of confidential information learned while an officer or director, it arises "by reason of" the party's former position.[59] On the other hand, if the claim merely alleges post-employment breach of a non-compete agreement, and it does not allege that the party used confidential information previously learned to facilitate the breach, then the breach does not arise "by reason of" the party's

---

[55] 2019 WL 2613281 (Del. Ch. June 26, 2019).

[56] 903 A.2d 324 (Del. Ch. 2006).

[57] *MedCPU*, 2019 WL 2613281, at *7 ("I follow the weight of authority under *LiveOps*, *Pontone*, and *Thompson* . . .").

[58] *Id.*

[59] *Id.*

17

position.[60]  In *medCPU*, the Court found that claims regarding the failure to return confidential documents and property, misappropriation of trade secrets, and possessing and using confidential and proprietary information all warranted advancement even though the actions arose post-termination.[61]  By contrast, claims for breach of employment agreements based on the plaintiffs' competition with the company and solicitation of its employees did not warrant advancement because these claims did not allege that the plaintiffs misused any confidential information in carrying out the breaches.[62]  This, I note, is consistent with my original bench decision and Order in this matter.

The Initial Complaint here stated that Heartland entered the employment agreement with Carr to, among other reasons, "preserve and protect its confidential information."[63]  It further stated that the purpose of the agreement was "intended to, among other things, preclude Carr from disclosing or misappropriating [Heartland's] confidential information."[64]  The Initial Complaint alleged that Carr's employment agreement required him to acknowledge that the restrictions were necessary to

---

[60] *Id.*

[61] *Id.* at *8.

[62] *Id.*

[63] Compl., ¶ 152.

[64] *Id.* ¶ 154.

protect the company's confidential information.[65] The claim then alleged that Carr breached the confidentiality restrictions outlined in his employment agreement through his insider trading.[66] The Initial Complaint also intertwined the misuse of confidential information with the allegations of unlawful competition and solicitation.[67]

In short, as I found in my December 3, 2018 bench decision in this matter, embodied in my December 7 Order, the Initial Complaint in the New Jersey Action alleged that Carr misused confidential information, and the provisions excerpted from the employment agreement made clear that this was confidential information learned while Carr was on the job. This misuse of confidential information was intertwined with the entirety of the contractual allegations against Carr. Under *medCPU*, these allegations "relat[e] to post-separation use of confidential information learned pre-separation" in pursuit of Carr's corporate capacity, warranting advancement.

The Defendants' Amended Complaint effectively erases all mention of confidentiality from the breach of contract claim. The Amended Complaint eliminates any mention that Carr ever sought or used confidential information, that

---

[65] *Id.* ¶ 162.

[66] *Id.* ¶¶ 166–76.

[67] *Id.* ¶¶ 181–82.

he copied any compensation plans, that he sought after or had access to any confidential contract terms, or even that he acknowledged in his contract the importance of confidentiality.[68]  The Amended Complaint thoroughly distances itself from allegations of a breach of the confidentiality portion of Carr's contract, and focuses solely on his post-employment competition and solicitation activity.  As it stands, the Amended Complaint falls into the second category under *medCPU* and does not warrant advancement because as alleged, Carr breached the contract after his termination and "did not use confidential information . . . obtained by reason of the fact of [his] position[] with [Heartland] in doing so."[69]

> 3. Amending a Claim May Moot Advancement Rights if it Substantively Changes the Underlying Litigation

As described above, the Initial Complaint and the Amended Complaint create different results under *medCPU*.  I find it necessary, in light of the amendment, to consider whether the Defendants have truly abandoned the claims triggering advancement, or instead have simply attempted artfully to pursue the same claims in cosmetically-redacted form.  It is significant to my decision that, in addition to their amendment, the Defendants represented to me at argument that they *will not*

---

[68] *See* Am. Compl., ¶¶ 225–51.

[69] *Ephrat v. MedCPU, Inc.*, 2019 WL 2613281, at *8 (Del. Ch. June 26, 2019).

base their breach of contract claim on any misuse of confidential information.[70] This, I find, diminishes the weight of Carr's argument that the Defendants will seek information through discovery that can then form the basis for a later-asserted claim for breach of the confidentiality aspects of his employment agreement.

Although advancement cases are typically decided on the allegations in the pleadings, where modification of an order is sought post-amendment the original complaint does not simply disappear. The court "looks to substance as well as form, and it would be inequitable to allow [a party] to evade advancement" if the amendments are mere cosmetic modifications that leave the underlying claim essentially unaltered.[71] An examination of Delaware cases reveals that the path leading to elimination of advancement via pleading amendment is straitened. For instance, the Defendant cites *Mooney v. Echo Therapeutics, Inc.*[72] In *Mooney*, the Court found the amendments did not successfully eliminate advancement.[73] Although the amendments were tailored to eliminate advanceable claims, the Court

---

[70] *See also* Am. Compl., ¶ 253 n.11 ("[Heartland] does not base, and will not base, its claim that Carr breached his non-compete and non-solicitation covenants on Carr's use or misuse of [Heartland's] confidential information.").

[71] *Brown v. LiveOps, Inc.*, 903 A.2d 324, 329 (Del. Ch. 2006).

[72] 2015 WL 3413272 (Del. Ch. May 28, 2015).

[73] *Id.* at *11.

examined the underlying causes of action and determined that the litigation would still involve the plaintiff's official capacity.[74]

The Defendants also cite to *Duthie v. CorSolutions Medical, Inc*.[75] In *Duthie*, the plaintiff brought a defamation lawsuit to defend himself against the defendants' fraud claims.[76] The latter claims were ultimately barred by principles of issue preclusion, and the defendants represented to the Court that for business reasons they would not bring any further fraud claims in any forum.[77] The Court, in light of these circumstances, found the plaintiff no longer faced a threat of litigation, and therefore his maintenance of his defamation action no longer warranted advancement.[78] Similarly, in *Xu Hong Bin v. Heckman Corp.*,[79] this Court revisited a holding finding claims required advancement, where the defendant clarified that it would not bring fiduciary claims related to pre-merger conduct against a plaintiff because it did not believe it had the standing to do so.[80] As the Court in *Mooney* observed regarding *Xu Hong Bin*, because "the corporation declined to assert pre-merger claims and

---

[74] *See id.* at *9–10.

[75] 2009 WL 1743650 (Del. Ch. June 16, 2009).

[76] *Id.* at *2–3.

[77] *Id.*

[78] *Id.*

[79] 2010 WL 187018 (Del. Ch. Jan. 8, 2010).

[80] *Id. at* *2 n.12.

22

instead challenged only post-merger conduct . . . there was a bright-line, temporal standard and by not asserting any claims relating to conduct before a set date, the corporation was able to defeat a claim for advancement."[81]

Finally, in *LiveOps*, the defendants attempted to amend their complaint by eliminating language that tied the allegations to the plaintiff's time as an officer or director.[82] The Court rejected this attempt, stating that the defendants could not "evade advancement by simply crossing out . . . phrases" when the substantive allegations remained unaltered.[83]

The principle underlying this line of cases is that amendment can eliminate advancement obligations, but only if the amendment and the amending party's representations alter the claim in a manner that assures the Court the plaintiff will not face litigation by reason of the fact of his or her corporate capacity. Having first found that a claim requires advancement, the Court must be vigilant in review for artful pleading, and ensure that cosmetic changes to pleadings do not defeat vested contract rights.

---

[81] *Mooney v. Echo Therapeutics, Inc.*, 2015 WL 3413272, at *7 (Del. Ch. May 28, 2015).

[82] *See Brown v. LiveOps, Inc.*, 903 A.2d 324, 329 (Del. Ch. 2006).

[83] *Id.*

Even under the gaze of such a jaundiced eye, I find the Defendants' amendment effectively moots Carr's claim for advancement because it substantially changes the nature of the claim. The Initial Complaint provides a useful backdrop that shows the Defendants originally stated a claim against Carr for the misuse of confidential information in violation of his employment agreement. They have chosen to eschew that claim. Further, they have represented to the Court that they will not rely on allegations of the misuse of confidential information in bringing their non-compete and non-solicitation arguments in the New Jersey Action, a representation on which I rely here. This substantively alters the landscape of the litigation because it removes the breach-of-confidentiality cause of action. Importantly, I find this situation distinguished from the amendments in *LiveOps*. In *LiveOps*, the amendments were largely cosmetic, doing little more than crossing out language that would tie the claims temporally to the plaintiff's employment.[84] Here, the Defendants have removed the entire confidentiality cause of action and any indication of reliance upon it, and have agreed to forgo pursuit of such a claim now or later, in a manner which raises a judicial estoppel against such an action in the future.

---

[84] *Id.*

24

This situation is also distinguishable from the amendments in *Mooney*, where discovery in the underlying case showed the litigation would still center on the plaintiff's official corporate capacity.[85]  Although Carr points to two discovery requests by the Defendants that, viewed broadly, could potentially be inquisitive of Carr's misuse of confidential information, I do not find these requests indicate that the litigation will meaningfully involve the misuse of confidential information in light of the new pleadings and representations of counsel.

In sum, I find that the Defendants' amendment of its complaint in the New Jersey Action substantially alters the breach of contract claim brought against Carr. The Amended Complaint does not allege any post-termination misuse of confidential information by Carr that he learned while Chairman and CEO.  Further, the Amended Complaint's allegations of unlawful competition and solicitation do not rely on the misuse of confidential information.  Under *medCPU*, therefore, the claim for breach of contract does not arise "by reason of the fact that" Carr formerly served as Chairman and CEO of Heartland.  Because I have found that the statutory language is interchangeable with the standard in § 5.9 of the Merger Agreement, this means that the breach of contract claim does not "arise[] out of or pertain[] to" Carr's former position.

---

[85] *See Mooney*, 2015 WL 3413272, at *9–10.

## III. CONCLUSION

Based on the foregoing, the Defendants' Motion to Modify the Advancement Order is granted. Carr has also requested attorneys' fees relating to this action. Our case law makes it clear that a plaintiff is only entitled to "fees on fees" to the extent of his success in seeking advancement.[86] Because I find that the breach of contract claim does not warrant advancement, Carr is not entitled to fees in this matter.

The parties should confer on a form of order to implement my decision here, employing the framework described in *Danenberg v. Fitracks, Inc.*[87] to govern proceedings going forward.

---

[86] *See Lieberman v. Electrolytic Ozone, Inc.*, 2015 WL 5135460, at *7 (Del. Ch. Aug. 31, 2015).

[87] 58 A.3d 991, 1003–04 (Del. Ch. 2012).